IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

```
                                      *
CAMERON JEFFERSON,
                                      *
        Plaintiff,
                                      *
v.                                              Case No.: PWG-15-2031
                                      *
SELECT PORTFOLIO
    SERVICING, INC., et al.,          *

        Defendants.                   *
```

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Plaintiff Cameron Jefferson (who is proceeding without counsel) claims that Defendants

Select Portfolio Servicing, Inc. ("SPS") and BWW Law Group, LLC ("BWW") have violated the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* and the Maryland

Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.* through their

communications with him regarding a debt he insists he does not owe and which he insists

neither Defendant is entitled to collect.  Am. Compl., ECF No. 12.[1]  Each Defendant has filed a

motion to dismiss, and the parties fully briefed the motions.  ECF Nos. 17, 21, 24, 25, 27, 28.  A

hearing is unnecessary, *see* Loc. R. 105.6, as it is evident from the Amended Complaint, exhibits

---

[1] Plaintiff includes a "Verification," in which he, "being duly sworn," states that the contents of
the Amended Complaint "are true to [his] knowledge," except where he states otherwise.  Am.
Compl. 12.  However, it is not notarized.  *See id.*  The Verification of Plaintiff's original
Complaint, which contained many of the same allegations against SPS but did not name BWW
as a defendant, was notarized.  ECF No. 1.  In any event, at this stage of the proceedings, I must
accept the facts as alleged in Jefferson's Amended Complaint as true, regardless of the
Verification.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

attached to it, and documents of public record that Jefferson has failed to state a claim against either Defendant.  Accordingly, I will grant the motions and dismiss this action.

## **Standard of Review**

Jefferson is proceeding *pro se*, and his Amended Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Jefferson from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's allegations of deceptive trade practices in violation of the MCPA are "subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Williams v. Dee Miracle Auto Grp. LLC*, No. ELH-15-2466, 2016 WL 3411640, at *4 (D. Md. June 22, 2016) (quoting *Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *6 (D. Md. Aug. 20, 2015)).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. . . ." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form.

*Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). Additionally, Fed. R. Evid. 201(b)(2) permits the Court to take judicial notice of "fact[s] that [are] not subject to reasonable dispute because [they] can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned," such as matters of public record.  Fed. R. Evid. 201(b)(2); *see Alston v. Wells Fargo Home Mortg.*, No. TDC-13-3147, 2016 WL 816733, at *1 n.1 (D. Md. Feb. 26, 2016).

## Fair Debt Collection Practices Act

"'The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.'"  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (quotation omitted)). To state a claim for relief under the FDCPA, Plaintiff must allege that "(1) [he] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart*, 859 F. Supp. 2d at 759–60 (citation omitted); *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citing 15 U .S.C. § 1692).  In Count One, Plaintiff claims that Defendants violated the FDCPA by (1) presenting themselves and Wells Fargo Bank National Association as Trustee for Structured Mortgage Assets Investments II, Inc., Bear Stearns Mortgage Funding Trust 2006-AR4, Mortgage Pass through Certificates, Series 2006-AR4 ("Wells Fargo") as creditors, when Defendants are acting as debt collectors; (2) attempting to collect a debt when he is not indebted to SPS, BWW, or Wells Fargo; (3) attempting to collect the debt past the applicable statute of limitations; (4) failing to include appropriate and consistent information in the dunning notices; (5) harassing him; and (6) failing to respond properly to his notice of dispute. Am. Compl. 1–3, 6–8, 10–11.  Defendants do not dispute that they are debt collectors or that they attempted to collect a debt from Jefferson.  Thus, the issue is whether

Jefferson sufficiently pleaded the third element—that either Defendant engaged in any act that the FDCPA prohibits.

    *1. Existence of mortgage*

    Jefferson claims that SPS, acting as a debt collector, violated the FDCPA and the MCPA in its efforts to collect "an alleged debt it claims is owed to [it] or an entity named Wells Fargo Bank National Association as Trustee for Structured Mortgage Assets Investments II, Inc[.], Bear Ste[a]rns Mortgage Funding Trust 2006-AR4, Mortgage Pass through Certificates, Series 2006-AR4," when he "has no Mortgage, Deed or Promissory Note owing to any party," and "has no personal knowledge of any debt owed to either Defendant 'SPS'" or Wells Fargo.  Am. Compl. 1–2; *see id.* at 10.  According to Jefferson, he "has never engaged in any transaction, service, or contracted with [Wells Fargo] for products and or merchandise."  *Id.* at 10.  He alleges that both Defendants "are masquerading as creditors."  *Id.* at 8.  Thus, the core of his pleadings appears to be that SPS and BWW violated the FDCPA and MCPA by attempting to collect a debt from him when he does not owe any debt to SPS, BWW, or Wells Fargo.  *See id.* at 8, 11.

    Yet, Plaintiff acknowledges that there is a "'Corporate Assignment of Mortgage' recorded in the land records of Prince George['s] County and against his personal private property . . . . by and or for the benefit of 'SPS'" and dated March 24, 2015.[2]  *Id.* at 3.  Plaintiff attaches the Assignment to his Amended Complaint.  Assignment, Am. Compl. Ex. B, ECF No.

---

[2] Plaintiff challenges the authenticity and admissibility of the Assignment in his Opposition to SPS's Motion.  Pl.'s Opp'n to SPS Mot. 5 n.1.  Yet, as noted, when considering a motion to dismiss, I accept the allegations in a plaintiff's pleadings as true, *see Aziz*, 658 F.3d at 390, and "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c).  Moreover, as noted, I may take judicial notice of matters of public record, such as the Assignment, pursuant to Fed. R. Evid. 201(b)(2), 803(8)(a)(i).  *See Alston*, 2016 WL 816733, at *1 n.1.

12-2.   It is an assignment of the mortgage and Deed of Trust on Jefferson's real property at 11509 Brigit Ct., Bowie, MD 20720 (the "Property") from Mortgage Electronic Registration Systems, Inc. to Wells Fargo, dated March 24, 2015, sealed, notarized, and recorded in the land records for Prince George's County.   *Id.*   This "exhibit prevails" over Jefferson's allegations to the contrary.   *See Fayetteville Investors*, 936 F.2d at 1465.   Additionally, SPS attaches the Deed of Trust ("Deed of Trust") encumbering the Property, listing Jefferson as the borrower, Bear Stearns Residential Mortgage Corporation as the lender, and Mortgage Electronic Registration Systems, Inc. as the beneficiary, SPS Mot. Ex. 2, SPS09–32, ECF No. 17-1.[3]   Thus, Jefferson does have a mortgage loan, and the outstanding balance is owed to Wells Fargo.   *See* Assignment.   Moreover, the correspondence he received from SPS and BWW, which he also attached to his Amended Complaint, stated that SPS was servicing the loan for Wells Fargo and moving toward foreclosure on Wells Fargo's behalf, Apr. 10, 2015 Ltr. from SPS to Pl., Am. Compl. Ex. A, ECF No. 12-1, and BWW "has been retained to provide legal services in connection with enforcement of the Deed of Trust."   July 22, 2015 Ltr. from BWW to Pl., Am. Compl. Ex. C, ECF No. 12-3.   Therefore, Jefferson cannot state a claim based on an allegation that SPS or BWW demanded payment for a debt owed to it, rather than Wells Fargo, or that he does not have a mortgage or owe a debt to Wells Fargo.   *See* Am. Compl. Exs. A–C; *Fayetteville Investors*, 936 F.2d at 1465.

---

[3] Plaintiff appears to dispute the authenticity of this document, arguing that "there is no evidence of any Loan, Mortgage, Note or Deed of Trust . . . ."   Pl.'s Opp'n to SPS Mot .7.   Nonetheless, I may take judicial notice of it, as it was recorded in the land records. *See* Fed. R. Evid. 201(b)(2), 803(8)(a)(i); *Alston*, 2016 WL 816733, at *1 n.1.

  2.  *How Defendants Presented Themselves*

Jefferson claims that SPS violated the FDCPA by "demanding payments and other performances of Plaintiff" through "several dunning notices" that "were deceptive" in that they presented SPS as a creditor rather than a debt collector.  Am. Compl. 10.  Likewise, he alleges that BWW presented itself as a creditor.  *Id.* at 8.  According to Jefferson, the notices "fail[ed] to contain the required language identifying them as 'debt collectors' in compliance to the FDCPA, allowing for Plaintiff to dispute the validity of their claims." *Id.* at 4.

The exhibits before me belie this assertion.  BWW's July 22, 2015 letter to Jefferson regarding his debt to Wells Fargo, attached to Jefferson's Amended Complaint as Exhibit C, states, in bold: "This communication is from a debt collector," and it lists Wells Fargo as the creditor.  Similarly, SPS's April 10, 2015 letter to Jefferson, the first page of which is attached to Jefferson's Amended Complaint as Exhibit A and the entirety of which is attached to SPS's Memorandum, states on page three, in bold: "We are a debt collector."  SPS Mot. Ex. 4, SPS038. SPS's letter stated that it was with regard to his mortgage loan, which SPS was servicing, and it listed Wells Fargo as the noteholder.  *Id.* Indeed, in his Opposition, Jefferson concedes that "one of the dunning notices dated April 10, 2015 contained the required language mandated by the FDCPA."  Pl.'s Opp'n to SPS Mot. 8.  Therefore, Jefferson cannot state a claim based on an allegation that SPS or BWW represented itself as a creditor, rather than a debt collector with regard to the debt owed to Wells Fargo.  *See* Am. Compl. Exs. A–C; SPS Mot. Ex. 4, SPS038; *Fayetteville Investors*, 936 F.2d at 1465.

Additionally, contrary to Jefferson's assertion that BWW's correspondence with him "did not specifically state it was on behalf of defendant 'SPS,'" Am. Compl. 6, BWW's August 12, 2015 letter to Jefferson stated: "This firm has been hired by Select Portfolio Servicing, Inc.

('SPS') to exercise the power of sale contained in the . . . [D]eed of [T]rust if the default claimed

there under by SPS is not resolved."  Am. Compl. Ex. D, ECF No. 12-4.  Once again, the exhibit

prevails and Jefferson cannot succeed on a claim that BWW violated the FDCPA by failing to

specify that it wrote on behalf of SPS.  *See id.*; *Fayetteville Investors*, 936 F.2d at 1465.

### 3.  *Whether Wells Fargo Is a Creditor*

Jefferson appears to argue that Wells Fargo, in turn, cannot be a creditor because when it

acquired the debt on March 24, 2015, the debt already was in default.  Pl.'s Opp'n to SPS Mot. 5,

8.  But the Fourth Circuit recently rejected this argument in *Henson v. Santander Consumer*

*USA, Inc.*, where it concluded that "the default status of a debt has no bearing on whether a

person qualifies as a debt collector" or a creditor.  817 F.3d 131, 135 (4th Cir. 2016).  Observing

that 15 U.S.C. § 1692a "excludes from the definition of creditor 'any person to the extent that he

receives an assignment or transfer of a *debt in default* solely for the purposes of facilitating

collection of such debt *for another*," the Fourth Circuit further concluded that the exclusion does

not apply when a person acquires debt "for its own account," instead of "on behalf of others." *Id.*

Thus, it is immaterial that the debt was in default when Wells Fargo acquired it, as Wells Fargo

acquired it "for its own account," as a creditor.  *See id.*

### 4.  *Language Required in Debt Collection Communications*

Jefferson argues that the April 10, 2015 letter from SPS "does not inform Plaintiff of the

required language contained in §1692g(4)(5)."[4] Pl.'s Opp'n to SPS Mot. 8.  It does not appear

---

[4]  Section 1692g(a)(4)–(5) requires a debt collector to, "[w]ithin five days after the initial
communication with a consumer in connection with the collection of any debt," provide to the
consumer in writing

(4) a statement that if the consumer notifies the debt collector in writing within
the thirty-day period that the debt, or any portion thereof, is disputed, the debt

that Plaintiff included a claim for a violation of § 1692g(a)(4)–(5) in his Amended Complaint, and he cannot amend his pleadings through his opposition. *See Nicholson v. Fitzgerald Auto Mall*, No. RDB-13-3711, 2014 WL 2124654, at \*4 (D. Md. May 20, 2014) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation and quotation marks omitted).   Moreover, he concedes that "SPS *did* include that language on the January 7, 2015 dunning letter."  Pl.'s Opp'n to SPS Mot. 8 (emphasis added) (citing Am. Compl. Ex. E, ECF No. 12-5).   Notably, § 1692g(a) does not require that the procedure for disputing debts described in § 1692g(a)(4) and (5) be included in every communication from a debt collector.   Rather, it only requires that, "[w]ithin five days *after the initial communication* with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" specific information, such as the amount of the debt, the creditor's name, and the procedure for disputing the debt.  15 U.S.C. § 1692g(a) (emphasis added).   The April 10, 2015 communication was not the initial communication, as SPS contacted Jefferson as early as January 7, 2015.   Thus, given that Jefferson acknowledges that the January 7, 2015 letter contained the requisite language, Jefferson has not alleged that SPS violated § 1692g(a)(4) or (5).

---

collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*5. Harassment*

Jefferson claims that "Defendant is unable to harass a consumer Plaintiff according to §1692d(4)." Am. Compl. 11.  It is true that the FDCPA provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and specifically may not "advertise[ ] for sale of any debt to coerce payment of the debt." 15 U.S.C. § 1692d(4).  Yet Jefferson does not allege that SPS advertised his debt for sale to coerce him to pay it.  Instead, he alleges vaguely that he received "several dunning notices" and that, "misrepresenting itself as a 'creditor' [SPS] has . . . harassed Plaintiff." Am. Compl. 4.  Plaintiff fails to state a claim for a violation of § 1692d(4). *See Leahy-Fernandez v. Bayview Loan Servicing, LLC*, No. 8:15-CV-2380-T-33TGW, 2016 WL 409633, at *7 (M.D. Fla. Feb. 3, 2016) (allegations that debt collector sent "one piece of mail once a month" that did not contain abusive language, and did not threaten debtor or contact debtor's friends, family, or co-workers, were insufficient to state a claim for harassment under the FDCPA); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456 (C.D. Cal. 1991) (mailing six letters per month for eight months, for a total of forty-eight letters, is not harassment under FDCPA).

*6. Statute of Limitations*

Jefferson also alleges that, under the FDCPA, a debt cannot be collected "past the Statute of Limitations," which he maintains is six years "in the State of Maryland on a Promissory Note and Written instrument." Am. Compl. 2–3, 6, 11.  But, the statute of limitations under Maryland law for an action on a "[p]romissory note or other instrument under seal" is twelve years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-102.  Moreover, this is an action pursuant to the FDCPA, and not an action on the note or Deed of Trust.  Even if the statute of limitations for bringing an

action to collect a debt had run, Jefferson has not identified a provision of the FDCPA that a debt collector would violate by attempting to collect debt beyond that limit.   Therefore, Jefferson fails to state a claim based on the timing of SPS and BWW's collection efforts in relation to a statute of limitations.

   *7. SPS's Response to Dispute*

   Plaintiff claims that he disputed SPS's debt collection efforts and "'SPS' failed to respond"; "[i]nstead the Plaintiff received a response from defendant 'BWW' on July 22, 2015," which Jefferson alleges "does not serve as a response from 'SPS'."  Am. Compl. 3.  As noted, August 12, 2015 letter from BWW that Jefferson attached to his Amended Complaint states that SPS hired BWW "to exercise the power of sale contained in the . . . [D]eed of [T]rust if there default claimed there under by SPS is not resolved," and that the letter was "in response to [Jefferson's] letter of August 3, 2015."  *Id.* Ex. D.   Attorneys retained for debt collection purposes may take actions on behalf of their clients to collect debts.  *See* Md. R. Prof'l Conduct R. 1.2 ("A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."); *d.* R. 4.1 cmt. 1 (stating attorney's duties "when dealing with others on a client's behalf"); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 414 (D. Md. 2012) (recognizing that law firm "hired on behalf of . . . homeowner association . . . has rights under the MCA [Maryland Condominium Act] to collect debts through the filings of lawsuits, the imposition of liens, and foreclosure"); *see also Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 717 (D. Md. 2014) (attorney–client relationship is a fiduciary relationship that "'involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation'" (citation omitted)).   Therefore, BWW, as SPS's counsel, was

authorized to respond to Jefferson on SPS's behalf, and no separate communication from SPS was required.  *See* Md. R. Prof'l Conduct R. 1.2.

    *8. BWW's Response to Dispute*

    Jefferson alleges that, in violation of § 1692g(b), "BWW's response is styled a 'Verification of Debt,' but fails to meet the legal definition of 'verification' which should be one under oath and sworn to."  Am. Compl. 6.  To the contrary, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed," such that the debt collector only must "confirm with his client that a particular amount is actually being claimed, not . . . vouch for the validity of the underlying debt.'"  *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1998) (quoting dist. ct. op.)).  Jefferson also appears to allege that BWW and SPS failed to "'obtain verification' [of the debt] from the true Creditor," as § 1692g(b) requires.  Am. Compl. 6.  But what § 1692g(b) requires is that "the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."  Thus, Defendants have not violated § 1692g(b).  *See* 15 U.S.C. § 1692g(b).

    Jefferson also claims that Defendants, through BWW's response, violated § 1692g(a)(1)–(2).  Am. Compl. 7. Section 1692g(a)(1)–(2) requires that a debt collector send a written notice (in conjunction with or within five days of the collector's initial communication with a consumer) that contains "the amount of the debt" and "the name of the creditor to whom the debt is owed."  15 U.S.C. § 1692g(a)(1)–(2).  Here, BWW's August 12, 2015 response states that Jefferson's "loan has an unpaid principal balance of $587,937.22" and that it is "now owned by Wells Fargo . . . ."  Am. Compl. Ex. D.  Therefore, Jefferson has not pleaded adequately that

Defendants, through BWW's August 12, 2015 letter, violated § 1692g(a)(1)–(2). *See* 15 U.S.C. § 1692g(a)(1)–(2).

9.  *Demand Amounts*

Jefferson claims that the fact that the alleged amount owed in the April 10, 2015 letter did not increase in August 12, 2015 letter is contrary to "simple math and common sense," and apparently a violation of the FDCPA.  Am. Compl. 7.  But, as BWW explains, the amount remained the same because it is the "'unpaid principal balance,'" that is, "'[t]he amount of the **principal** obligation under the mortgage,'" and "[t]he amount of the unpaid **principal** balance would not change unless a payment was made (which Plaintiff does not allege)."  BWW Mem. 6–7 (quoting Am. Compl. Ex. A & D (emphasis in BWW Mem.)).  Jefferson also claims that Defendants violated the FDCPA by demanding inconsistent amounts in different letters to him. Am. Compl. 7.  Again, the correspondence explains the differences, as the July 15, 2015 letter refers to "the total amount required to pay the Notice in full," $843,706.78, and the other letters state the "unpaid principal balance."  *See* Am. Compl. Ex. A, C, D.  Thus, the correspondence is not deceptive, and Jefferson has not stated a claim for violation of the FDCPA based on Defendants' inclusion of the principal amount and total debt owed in different correspondence with him. *See Stewart*, 859 F. Supp. 2d at 759–60.

## Maryland Consumer Protection Act

The MCPA provides that "'a person may not engage in any unfair or deceptive trade practice,'" such as a "false or misleading statement[ ]," in relation to "'[t]he extension of consumer credit' or the 'collection of consumer debts.'"  *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013) (quoting Com. Law § 13-303). To state a claim for a violation of the MCPA through "false or misleading statements,"

Plaintiff "must allege not only that [Defendants] made a false or misleading statement, but also that the statement caused [Plaintiff] an actual loss or injury." *Id.*

In Count Two, Jefferson claims:

> Defendants [ ]SPS and [ ]BWW's deceptive acts of attempting to collect an alleged debt past the Statute of Limitations may be a violation of "MCPA". Additionally attempting to collect an amount not due and owing, providing false information regarding defendant being a creditor, providing any representation as to another being a creditor would be a violation of §13-301(1)(ii)(3)(9). Defendant "SPS" and [ ]BWW's failed to identify itself as a debt collector in its communications with Plaintiff. Defendant also knowingly engaged in acts to deceive Plaintiff and demand payments and possession of his private personal property to which "SPS" has no interest, claim, or right to receive.

Am. Compl. 11–12.  As discussed with regard to the FDCPA, the exhibits that are a part of the record in this case contradict Jefferson's assertions of false or deceptive representations by Defendants, and the exhibits prevail over the allegations in the Amended Complaint.  *See* Am. Compl. Exs. A–E; SPS Mot. Exs. 2 & 4, SPS09–38; *Fayetteville Investors*, 936 F.2d at 1465. Consequently, Jefferson fails to state a claim under the MCPA.  *See Piotrowski*, 2013 WL 247549, at *10.

### Conclusion

In sum, Jefferson has failed to state a claim against either SPS or BWW, and his Amended Complaint will be dismissed in its entirety.  The dismissal shall be with prejudice, given that Jefferson already had the opportunity to amend to address the deficiencies SPS identified in his original complaint, when SPS sought leave to file its pending motion before Jefferson filed the Amended Complaint.  ECF No. 7.  Further amendment would be futile.  *See* ECF No. 25; *McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little

benefit to the litigant, as the claim cannot be made viable through reformulation." (internal citation omitted)).

## ORDER

Accordingly, for the reasons stated in this Memorandum Opinion and Order, it is, this   30th   day of    June    , 2016, hereby ORDERED that

1. SPS's and BWW's Motions to Dismiss, ECF Nos. 17 and 25, ARE GRANTED;

2. Jefferson's Amended Complaint IS DISMISSED WITH PREJUDICE; and

3. The Clerk SHALL MAIL a copy of this Memorandum Opinion and Order to Jefferson and CLOSE THIS CASE.


                                         _____/S/_____
                                         Paul W. Grimm
                                         United States District Judge

lyb